UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| UNITED STATES OF AMERICA | ) |  |
|---|---|---|
|  | ) |  |
| v. | ) | Case No. 3:15-CR-048 JD |
|  | ) |  |
| VINCENT JONES | ) |  |

## **OPINION AND ORDER**

Defendant Vincent Jones is facing a one-count indictment for possessing firearms as a felon. Through counsel, he moved to suppress the firearms and ammunition found during a search of his home, but the Court denied that motion, finding that the search was lawful. Mr. Jones then moved to reconsider that ruling and to reopen the evidentiary hearing so that he could testify on his own behalf. The Court granted that motion insofar as the Court reopened the evidentiary hearing. At the hearing, Mr. Jones testified and the government presented rebuttal evidence. Having now considered the supplemented record, the Court finds that the additional evidence does not alter its original conclusions. Accordingly, the Court denies the motion to reconsider and will not suppress the evidence in question.

Mr. Jones asks the Court to suppress firearms and ammunition discovered through a search of his home, arguing that the search was unlawful. The facts of that search are set forth in the Court's prior orders. It is undisputed that Ms. Kelley validly consented to the search of the home, so the questions are whether that consent was effective as to Mr. Jones and whether the search fell within the scope of that consent. In his previous motion, Mr. Jones argued that while he did not object to the search, the officers removed him from the premises for the purpose of preventing him from objecting, which he believed made the search unlawful. The Court disagreed, finding first that the officers had not actually removed him from the premises since he remained only ten to twenty feet away from the door throughout the search, and second, that the

officers' subjective intentions were immaterial so long as the defendant was not unlawfully detained (which he does not claim). *Fernandez v. California*, 134 S. Ct. 1126 (2014) (rejecting the argument that *Randolph* invited "an inquiry into the subjective intent of officers" and holding that "an occupant who is absent due to a lawful detention or arrest stands in the same shoes as an occupant who is absent for any other reason").

In his present motion, Mr. Jones argues that he did in fact object to the search, so he was the "present and objecting" occupant described in *Georgia v. Randolph*, 547 U.S. 103 (2006) as to whom the other occupant's consent was invalid. In *Randolph*, officers arrived at a home to investigate a domestic dispute, and the wife informed them that the husband had drugs inside the house. One of the officers asked the husband for permission to search the house, and the husband "unequivocally refused." 547 U.S. at 107. The officer then asked the wife, who readily consented, and the officer entered the home, where he found cocaine. *Id.* The husband moved to suppress the evidence, arguing that his wife's consent was invalid in light of his refusal. The Supreme Court agreed, holding that "a warrantless search of a shared dwelling for evidence over the *express refusal of consent* by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident." *Id.* at 120 (emphasis added).

At the initial suppression hearing, there was no evidence that Mr. Jones had objected to any search, so this exception did not apply. [*See* DE 34 p. 115–16]. However, Mr. Jones now argues based on his testimony at the reopened hearing that he did object. Mr. Jones testified that when the police returned to the home after speaking with Ms. Kelley and her daughter at the station, they knocked on the door and he answered. They told him that he needed to leave the property, but that he could gather his things, so Mr. Jones went back inside to grab his keys and

2

wallet. As he was walking across the living room, two of the officers stepped inside. Mr. Jones testified that he then told them that he did not need any help finding his keys or wallet and that he did not invite them in. Mr. Jones further testified that a third officer then stepped inside and started poking around, at which point he asked, "don't you need a warrant?" Mr. Jones then exited the home and was placed in handcuffs. He was never asked for consent to search the home, and said nothing more about the officers' presence in his home, even though he knew they were inside.

On that basis, Mr. Jones argues that he did object to the search, so Ms. Kelley's consent was not valid as to him. For multiple reasons, the Court cannot agree. First, all five officers who were present at the scene testified at the original suppression hearing. Though there were some discrepancies as to which officers did what, as can be expected, every officer testified that Mr. Jones never objected to any search or told the officers they could not be inside the home. In addition, Mr. Jones has already lied on multiple occasions in multiple respects in relation to this matter. When Mr. Jones first greeted officers at the door, they asked him if there were any weapons in the house. He said no, except for some knives in the kitchen. The following day, Mr. Jones was interviewed twice by law enforcement officers: first, by a detective with the LaPorte County Sheriff's Office, and second, by an agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives. During both interviews, Mr. Jones was asked whether he lived at the home, and both times he said no. In fact, he told the detective five times that he did not live there. Mr. Jones was also asked by the ATF agent about any firearms or ammunition, and Mr. Jones told them that he never saw any firearms in the home. Those statements were each false. Mr. Jones was living at the home at the time, and had been living there for more than four years. Likewise, the officers found many firearms inside the home, and Mr. Jones admitted on cross-examination that

they were his. In other words, when Mr. Jones perceived it to be in his interests to deny that he lived at the house or that he had firearms there, he did so on multiple occasions. Now that his interests have changed,[1] so has his story. And needless to say, Mr. Jones has a substantial self-interest at stake, as he is asking the Court to suppress evidence, which would weaken the government's case against him.

Moreover, Mr. Jones' conduct during and after the search was inconsistent with having objected to the search or to the officers' presence in his home. After he exited the home and was placed in handcuffs, Mr. Jones remained only feet away from the entrance and was standing next to two officers. However, he never told them that he objected to the other officers being inside his home, as might be expected if he had actually just refused consent, as he now claims. Likewise, in multiple interviews with law enforcement officers the following day, he never complained that the officers entered his home against his wishes. To the contrary, he insisted that he did not even live there and that the firearms were not his. Thus, rather than objecting to the search of his home, thereby asserting his personal interest in the premises, it is apparent that he was taking the opposite tack and attempting to disassociate himself from the home altogether. In light of each of those circumstances, the Court cannot credit Mr. Jones' testimony.

Moreover, even if the Court did credit Mr. Jones' testimony, his statements to the officers would still not amount to an express refusal of consent under *Randolph*. It was undisputed in *Randolph* that the husband had "unequivocally refused" consent to search, so the Court had no occasion to consider what conduct would suffice to override a co-occupant's consent. 547 U.S. at 107. However, the Court based its holding on the "widely shared social expectations" of a visitor

---

[1] If Mr. Jones was not living at the home, he might not have standing to challenge the search, and if the safes were Ms. Kelley's and not his, then Ms. Kelley would have clearly had authority to consent to their search.

4

to a jointly occupied home. *Id.* at 111. The Court observed that "a caller standing at the door of shared premises would have no confidence that one occupant's invitation was a sufficiently good reason to enter when a fellow tenant stood there saying, 'stay out.'" *Id.* at 113. Applying those same expectations to an officer in that situation, the Court held that the officer would not have valid consent to enter. *Id.* at 114.

Mr. Jones never told the officers to "stay out" or unequivocally refused consent, though; he stated (at best) that *he* had not invited them in and essentially asked whether they were allowed to be there. The social expectations in those circumstances are a far cry from *Randolph*. If a visitor to a home was asked by an occupant whether they have permission to be there, the visitor would not perceive themselves as unwelcome and feel compelled to leave. Rather, as long as they did have permission from another occupant, they would feel free to remain. Here, the officers did receive permission from an occupant, Ms. Kelley, prior to commencing their search. Therefore, Mr. Jones' question as to whether they were allowed to be there would not have reasonably conveyed that he intended to override another occupant's invitation or to object to the officers' presence, and thus would not have invalidated the search under *Randolph*. *See United States v. Fletcher*, No. 2:09-cr-82-JVB, 2010 WL 893793 (N.D. Ind. Mar. 9, 2010) (finding that the defendant did not expressly refuse consent under *Randolph* by asking the officers if they had a warrant); *United States v. Foster*, 654 F. Supp. 2d 389 (E.D.N.C. 2009) (finding that a defendant did not expressly refuse consent by telling officers "that he was going to make officers 'earn their pay'").

Mr. Jones last argues on that topic that the search was invalid because the officers should have asked him for his consent and advised him of his rights. However, the Supreme Court has expressly declined to require officers to seek out consent from other occupants once they have

valid consent from one occupant. *Randolph*, 547 U.S. at 122. In addition, Mr. Jones' reliance on *Pirtle v. Indiana*, 323 N.E.2d 634 (Ind. 1975) is misplaced. In *Pirtle*, the Indiana Supreme Court held that "a person who is asked to give consent to search while in police custody is entitled to the presence and advice of counsel prior to making the decision whether to give such consent," and that the person must be advised of that right prior to waiving it. 323 N.E.2d at 640. However, the search at issue here was not authorized by Mr. Jones' consent, but by Ms. Kelley's (who was not in custody), so *Pirtle* is inapplicable. *Ward v. Indiana*, 903 N.E.2d 946, 957 (Ind. 2009) (holding that *Pirtle* did not apply where "the search by police was not based upon the defendant's consent"). Accordingly, because Ms. Kelley validly consented to the search, and because Mr. Jones did not object or refuse consent, the Court finds that the consent was valid as to Mr. Jones.

Finally, Mr. Jones argues that even if the officers had consent to enter the home, Ms. Kelley did not have authority to consent to a search of his safes. He further argues that the safes were closed and locked, and that by opening one of the safes and seeing the firearms inside, the officers exceeded the scope of the consent and thus conducted an illegal search. The Court found in its prior order that the door to the safe was actually ajar, and that Sgt. Piergalski saw the handguns inside before opening the door further. Because the firearms were visible in plain view prior to opening the safe, Sgt. Piergalski's observation did not constitute a search. *Horton v. California*, 496 U.S. 128, 133 (1990); *United States v. Schmidt*, 700 F.3d 934, 939 (7th Cir. 2012); *United States v. Brown*, 79 F.3d 1499, 1508 (7th Cir. 1996). And once the incriminating items were apparent, the officers were entitled to seize them regardless of whether they were within the scope of the consent to search. *United States v. Cellitti*, 387 F.3d 618, 623 (7th Cir.

2004) ("[A]n officer may . . . seize an incriminating item not within the scope of the consent [to search] if it is in 'plain view.'").

The only new evidence on this point is Mr. Jones' testimony that his safes were actually locked at the time. As between Mr. Jones and the officers, though, the Court finds the officers to be more credible. Sgt. Piergalski testified consistently in response to persistent and precise questioning as to how he observed the firearms inside the safe before he opened the door the rest of the way. Captain Jackson corroborated that the door was slightly ajar when they entered the room. Meanwhile, Mr. Jones has ample motive to lie, and has shown himself willing to do so when he perceives it to be expedient, as discussed above. Therefore, the Court again finds that Sgt. Piergalski observed the firearms inside the safe prior to opening the door, and that his observation fell within the plain view doctrine.

Moreover, the Court also held in its prior order that, even if the officers had unlawfully searched the safe during their initial search, suppression of the firearms would not be warranted. As again conceded by counsel, the officers had probable cause for a search warrant even prior to entering the home. In addition, the officers were investigating allegations of serious offenses committed by Mr. Jones against a minor; Ms. Kelley had expressed to them that she was afraid for her safety, that Mr. Jones had violent and aggressive tendencies, and that he had weapons in the home that she was afraid he would use against her; officers confirmed that Mr. Jones had a criminal record and could not lawfully possess a firearm; and prior to seeing inside the first safe, officers observed boxes of ammunition and empty holsters in the bedroom, which further corroborated Ms. Kelley's statement and indicated that firearms were likely nearby. It is unthinkable that the officers would not have sought a search warrant if they had not seen the firearms inside the first safe, especially since they did seek and receive a warrant prior to

opening the second, locked safe. None of the evidence at the reopened hearing affects that conclusion. Therefore, for this additional reason, the Court finds that suppression is not warranted.

In conclusion, the Court DENIES Mr. Jones' motion to reconsider, [DE 39], and will not suppress the evidence in question.

SO ORDERED.

ENTERED: June 21, 2016

                                        /s/ JON E. DEGUILIO
                                        Judge
                                        United States District Court